STATE EX REL. ATTORNEY GENERAL *v.* LION OIL REFINING COMPANY.

Opinion delivered May 24, 1926.

1. TAXATION—UNIT SYSTEM.—The unit system of taxation can be applied only to public carriers and similar public corporations.

2. TAXATION—OIL COMPANY.—There is no organic relation between the plants in different States of a corporation engaged in drilling for oil and refining it and no such connected use of such plants as authorizes a tax on its capital stock or justifies the application of the unit system of taxation.

3. TAXATION—CAPITAL STOCK OF FOREIGN CORPORATION.—Under the due process clause of the Fourteenth Amendment, the State is prohibited from taxing the capital stock of foreign corporations which is neither located nor used within the boundaries of the State.

Appeal from Union Chancery Court, Second Division; *George M. LeCroy,* Chancellor; affirmed.

STATEMENT BY THE COURT.

Pursuant to the authority given him by § 10204 of Crawford & Moses' Digest, the Attorney General instituted this action in the chancery court against the Lion Oil Refining Company to recover taxes for the years 1922 to 1924, both inclusive, which he alleges escaped taxation.

According to the allegations of the complaint, the Lion Oil Refining Company is a private corporation organized under the laws of the State of Delaware for the purpose of engaging in the production, refining and marketing of oil, gas, and their products. On November 19, 1923, the Lion Oil Refining Company complied with the laws of the State of Arkansas and was duly authorized to do business in this State. It has since been engaged in refining and marketing oil and gas and their products in this State. The corporation has paid the taxes assessed on its tangible property in this State, but has failed to assess or pay the taxes on that proportion of its capital stock which is represented by its tangible property in this State.

The complaint alleges that the tangible property of said corporation represents a large percentage of the market value of its capital stock, which has escaped taxation in the State of Arkansas during said years.

The chancery court sustained a demurrer to the complaint, and, upon the plaintiff's declining to plead further, it was decreed that the complaint should be dismissed for want of equity.

The case is here on appeal.

*H. W. Applegate,* Attorney General, *R. E. L. Johnson, J. E. Harris* and *Robert A. Kitchen,* special counsel, for appellant.

*Mahony, Yocum & Saye,* for appellee.

*Bryan, Williams & Cave* and *Patterson & Rector, amici curiae,* on behalf of appellee.

HART, J., (after stating the facts). The Attorney General claims the right to levy and collect the tax under the provisions of §§ 9965 and 9966 of Crawford & Moses' Digest. The act was passed by the Legislature of 1917, and among other things the title provides that it is an act assessing for taxation the tangible property of all corporations.

Section 9965 reads as follows: "All corporations doing business in this State, except corporations whose property is assessed by the Arkansas Tax Commission and the corporations required to make and file the special returns provided for in § 9904, shall, in addition to the list prescribed by § 9904, make and file with the assessor of the county wherein its principal office is situated a statement wherein shall be distinctly set forth:

"(1). The name of the corporation and the location of its principal office.

"(2). The number of shares of stock of said corporation outstanding and the face value of each share.

"(3). The market value of each share, and, if no market value, the actual value of each share of stock, and the net income of the corporation shall be considered in determining the actual value of the shares of stock, if they have no market value.

"(4). The aggregate market value, or actual value as the case may be, of all outstanding stock.

"(5). The total bonds of the corporation secured by mortgage or deed of trust on property belonging to the company, and the aggregate market value, or actual value, of such bonds.

"(6). The assessed value of all real estate owned by the corporation.

"(7). The assessed value of all tangible personal property owned by the company and assessed under § 9904.

"The sum of items four and five, less the sum of items six and seven, shall be held to be the value of the intangible property of the corporation, and shall be listed

and assessed by the corporation, as agent for its shareholders, under the heading, 'Intangible Property.'

"The return prescribed by this section is required in addition to that required by § 9904, and its purpose is to secure the assessment of the intangible property belonging to the corporation.

To sustain his right to collect the tax, the Attorney General relies upon our decisions construing the act under consideration and our earlier acts providing for the assessment of the intangible property of corporations. *State ex rel.* v. *Bodcaw Lumber Co.,* 128 Ark. 505; *State ex rel.* v. *Ft. Smith Lumber Co.,* 131 Ark. 40; *Crossett Lumber Co.* v. *State,* 139 Ark. 397; and *State* v. *Gloster Lumber Co.,* 147 Ark. 461.

These decisions were dealing with the power of the State to tax the intangible property of domestic corporations. It is contended, however, by the Attorney General that the act is sufficiently broad and comprehensive to include foreign corporations, and that foreign corporations authorized to do business in this State fall under the provisions of the statute and must comply with its terms.

If the provisions of the statute are to be extended to apply to foreign corporations, it is apparent that the statute would be unconstitutional, at least so far as it applies to foreign corporations.

The Supreme Court of the United States has uniformly held that a State may not, consistently with the due process provision of the Fourteenth Amendment, include, at least as against any foreign corporation, any part of its tangible property lying without the State for purposes of taxation. *Louisville & Nashville Rd. Co.* v. *Greene,* 244 U. S. 522; *Looney* v. *Crane Co.,* 245 U. S. 178; and *Union Tank Line Co.* v. *Wright,* 249 U. S. 275.

In the case last cited it was expressly held that a State cannot tax the property of a foreign corporation which has never come within its borders.

Again, in *Wallace* v. *Hines,* 253 U. S. 66, it was said that the only reason for allowing a State to look beyond

its borders when it taxes the property of foreign corporations is that it may get the true value of the things within it, when they are part of an organic system of wide extent, that gives them a value above what they otherwise would possess. In that case the court was considering the unit system of taxation as applied to railroad companies carrying on business in two or more States.

It has also been held that a State cannot tax the property of a foreign corporation outside the State, regardless of whether the corporation is a carrier or trading company. *International Paper Co.* v. *Massachusetts,* 246 U. S. 135; and *American Bauxite Co.* v. *Board of Equalization,* 119 Ark. 362.

The Attorney General seeks to uphold the validity of the statute on the ground that the general rule of the unit system of taxation in cases of railroads and other public service corporations carrying on business in two or more States should be applied to oil companies organized in another State and doing business in this State.

In Cooley on Taxation, 4 ed., vol. 2, § 811, it is said that it is properly held that the unit rule should not be applied to mining companies, oil companies, or the like. Continuing, the author said that this doctrine never has been applied, nor can it justly be applied to manufacturing or other similar plants or industries which are under common ownership but used or operated in different States. Our case of *American Bauxite Co.* v. *Board of Equalization,* 119 Ark. 362, is first cited. That case in principle sustains the text.

In discussing the method of arriving at the value of property for taxation under our Constitution, it was said that property is assessed in this State whether it produces income or not, and property is not taxed according to its income, and indeed the question of income is of importance only as it relates to and affects the value.

In discussing the uses made of the ore after it was shipped out of the State, for any purposes other than to determine the value of the land from which it was

mined, the court said: "After property is taken out of this State it ceases to be subject to taxation within this State, and no attempt is made by the Constitution or laws of this State to impose upon such property any of the burdens of taxation."

In *Standard Oil Co.* v. *Howe,* 257 Fed. 481, it was held that the Civil Code of Arizona providing for the unit rule of value in the taxation of private car lines, railroad property, and telegraph and telephone lines, does not authorize the unit rule valuation for taxation of the property of a foreign oil company.

Again, in *Utah-Idaho Sugar Co.* v. *Salt Lake County* (Utah), 210 Pac. 106, 27 A. L. R. 874, it was held that a lump assessment upon a corporation for intangible property arising out of tangible property located in several States, must fail *in toto* if there is no method of separating the assessments arising out of the extraterritorial property from that arising out of the property within the State.

In discussing the right of an assessing officer to take into consideration the value of tangible property situate in one State to enhance the value of property in another State, the court quoted with approval from the United States Supreme Court in *Delaware, Lackawanna & West. Rd. Co.* v. *Pennsylvania,* 198 U. S. 343, the following: "So, if the State cannot tax tangible property permanently outside of the State and having no *situs* within the State, it cannot attain the same end by taxing the enhanced value of the capital stock of the corporation which arises from the value of the property beyond the jurisdiction of the State."

Continuing the discussion, the Supreme Court of Utah further said: "While it is quite true that, in taxing the property of a foreign corporation which is in the taxing State, the latter State may 'look beyond its borders * * * that it may get the true value of the things within' the State, yet the 'only reason' why that may be done is to obtain the true value of the property in the

taxing State. *Wallace* v. *Hines,* 253 U. S. 69, 64 L. ed. 786, 40 Sup. Ct. Rep. 435.''

It is apparent from the reasoning of the Supreme Court of the United States that the unit system of taxation can only be applied to public carriers and other like public corporations, and that the rule is not applicable to corporations like the oil refining company.

In discussing the reasons for the rule, in *Cleveland, Cincinnati, Chicago & St. Louis Ry. Co.* v. *Backus,* 154 U. S. 439, the court said: ''The rule of property taxation is that the value of the property is the basis of taxation. It does not mean a tax upon the earnings which the property makes, nor for the privilege of using the property, but rests solely upon the value. But the value of property results from the use to which it is put, and varies with the profitableness of that use, present and prospective, actual and anticipated. There is no pecuniary value outside of that which results from such use. The amount and profitable character of such use determines the value, and if property is taxed at its actual cash value it is taxed upon something which is created by the uses to which it is put. In the nature of things it is practically impossible—at least in respect to railroad property—to divide its value, and determine how much is caused by one use to which it is put and how much by another.''

In *Adams Express Co.* v. *Ohio,* 165 U. S. 194, the difference between a unity of use and management and the unity of ownership of property is clearly expressed by Mr. Chief Justice Fuller as follows: ''We repeat that, while the unity which exists may not be a physical unity, it is something more than a mere unity of ownership. It is a unity of use, not simply for the convenience or pecuniary profit of the owner, but existing in the very necessities of the case—resulting from the very nature of the business.''

''The same party may own a manufacturing establishment in one State, and a store in another, and may make profit by operating the two, but the work of each is

separate. The value of the factory in itself is not conditioned on that of the store, or *vice versa,* nor is the value of the goods manufactured and sold affected thereby. The connection between the two is merely accidental and growing out of the unity of ownership. But the property of an express company distributed through the different States is an essential condition of the business united in a single specific use. It constitutes but a single plant, made so by the very character and necessity of the business.''

Again, in *Fargo* v. *Hart,* 193 U. S. 490, the court said: ''A State cannot tax the privilege of carrying on commerce among the States. Neither can it tax property outside of its jurisdiction belonging to persons domiciled elsewhere. On the other hand, it can tax property permanently within its jurisdiction, although belonging to persons domiciled elsewhere and used in commerce among the States. And when that property is part of a system and has its actual uses only in connection with other parts of the system, that fact may be considered by the State in taxing, even though the other parts of the system are outside of the State.''

In the case of a corporation engaged in drilling for oil and refining it, it is manifest that there can be no organic relation between its plants situated in different States, and there can be no connected use of these plants within the rule laid down above.

The corporation in the case at bar was organized in the State of Delaware, and was engaged in drilling for oil and refining it in the State of Arkansas. It might have had similar plants in the States of Texas and Louisiana. If so, its various plants would not be operated as a unit. Each one would be separately operated, and might be shut down without any impairment of the operating power of its plants in the other two States.

It seems clear from the reasoning in the cases above cited, and others which might be cited, that the unit system of taxation cannot be applied to corporations like

the one in the case at bar engaged in drilling for oil and refining it.

Moreover, the State was assuming to exercise its power of taxation over the intangible property of corporations in the act under consideration. It is in no sense an excise tax, such as was under consideration in *Alpha Portland Cement Co.* v. *Massachusetts,* 265 U. S. 203, and cases cited. The tax levied under the statute is a tax on property, and was intended to reach the intangible value of the capital stock of a corporation. This is clearly shown by the language of the statute. It is expressly provided that the sums of items four and five, less the sums of items six and seven, shall be held to be the value of the intangible property of the corporation, and shall be assessed by the corporation as agent for its shareholders under the heading, "Intangible Property."

Item four is a statement of the aggregate market value of all outstanding stock.

Item five is the aggregate market value of all the bonds of the corporation secured by a mortgage on its property.

Items six and seven are statements of the assessed value of all real estate and all tangible personal property of the corporation.

Thus it will be seen that the Legislature provided that the aggregate market value of all outstanding stock and the total bonds of the corporation, less the assessed value of all real estate and all tangible personal property belonging to the corporation, should be assessed as the intangible property of the corporation.

The statute therefore could in no sense apply to the taxation of foreign corporations without violating the holding of the Supreme Court of the United States and of our own court to the effect that a tax on property wholly beyond the confines of the State constitutes the taking thereof without due process of law.

The capital stock of a foreign corporation is property permanently beyond the borders of this State, and, under the authorities cited above, the due process clause

would preclude the State from taxing the capital stock of foreign corporations which is neither located nor used within the boundaries of the State.

The provisions of the statute do not fit in with any constitutional power of the State over the taxation of the property of foreign corporations, and we do not think that it was the intention of the Legislature that the statute should be applicable to foreign corporations.

It follows that the decree of the chancellor must be affirmed.