**B. T. SHELTON et al., Plaintiffs,**

v.

**Ed. I. McKINLEY, Jr., et al., Defendants.**

**Civ. No. 3708.**

United States District Court
E. D. Arkansas, W. D.
June 8, 1959.

J. R. Booker, Christopher C. Mercer, Jr., Harold B. Anderson and Thad D. Williams, Little Rock, Ark., for plaintiffs.

Herschel H. Friday, of Mehaffy, Smith & Williams, Little Rock, Ark., and Louis L. Ramsay, Jr., of Coleman, Gantt & Ramsay, Pine Bluff, Ark., for defendants.

Before SANBORN, Circuit Judge, and MILLER and HENLEY, District Judges.

PER CURIAM.

This is a class action in which the plaintiffs [1] seek declaratory and injunctive relief against the enforcement of Act 10 of the Second Extraordinary Session of the Arkansas Legislature, held in August, 1958, and of Act 115 of the regular 1959 session of that body. It is claimed that those statutes are violative of the First and Fourteenth Amendments to the Constitution of the United States. Upon the filing of the complaint, a statutory court of three judges was convened, and the case has been tried to that court.

Act 10 provides in substance that no person shall be employed or elected to employment as a superintendent, principal or teacher in any public school in Arkansas, or as an instructor, professor or teacher in any public institution of higher learning in that State until such person shall have submitted to the appropriate hiring authority an affidavit listing all organizations to which he at the time belongs and to which he has belonged during the past five years, and also listing all organizations to which he at the time is paying regular dues or is making regular contributions, or to which within the past five years he has paid such dues or made such contributions. The Act further provides, among other things, that any contract entered into with any person who has not filed the prescribed affidavit shall be void; that no public moneys shall be paid to such person as compensation for his services; and that any such funds so paid may be recovered back either from the person receiving such funds or from the board of trustees or other governing body making the payment. The filing of

1. The plaintiffs are: B. T. Shelton, a Negro school teacher employed in the Little Rock public school system; the Arkansas Teachers Association (ATA), a professional organization, the membership of which consists of Negro school teachers and college professors in the State of Arkansas; and T. W. Coggs, the Executive Secretary of ATA. The plaintiff, Shelton, sues for himself and others similarly situated; and the ATA and Coggs are suing for the benefit of members of the Association.

a false affidavit is denounced as perjury, punishable by a fine of not less than five hundred nor more than one thousand dollars, and, in addition, the person filing the false affidavit is to lose his teaching license.

Section 1 of Act 115 makes it unlawful for any member of the National Association for the Advancement of Colored People (hereinafter called NAACP) to be employed by the State of Arkansas or any of its subdivisions, or by any school district, and declares that the prohibition of such employment shall continue so long as membership in the NAACP exists. Section 2 authorizes employing agencies to require from any employee an affidavit as to whether he is a member of the NAACP and a refusal to furnish the affidavit is made a ground for dismissal from employment.

Section 3 of the Act provides in substance that any person discharged from or declared ineligible for public employment on account of NAACP membership may, within four months of such dismissal or declaration, petition the circuit court for an order to show cause why a hearing on the charges against him should not be had; that until the final judgment on such hearing the dismissal or declaration of ineligibility shall be stayed; that the hearing shall consist of the taking of evidence with the right of cross-examination, and that the burden of sustaining the validity of an order of dismissal or declaration of ineligibility by a fair preponderance of the credible evidence shall be upon the person making such dismissal or declaration of ineligibility.

The operative sections of this statute are preceded by a preamble, the gist of which is that the NAACP has been guilty of creating racial strife and turmoil in the State of Arkansas; that it has threatened progress in race relations in the State; that it has striven to stir up dissatisfaction and unrest among Negroes, and that because of its purposes and activities membership therein is incompatible with the "peace, tranquility and progress that all citizens have a right to enjoy." The preamble also contains a recitation that the Special Education Committee of the Arkansas Legislative Council[2] has found that the NAACP "is a captive of the international communist conspiracy".

When the suit was originally filed, B. T. Shelton was the only named plaintiff, and the original defendants were the Little Rock, Arkansas Special School District, the members of the Board of Directors of that District, and the Superintendent of Schools. Subsequently, an amended complaint was filed adding ATA and its executive secretary as plaintiffs, and adding as defendants the Pine Bluff, Arkansas, Special School District, the members of the School Board of that District and the Superintendent of Schools, and the Board of Trustees and President of the Arkansas A. M. & N. College for Negroes.

Also named as defendants were Bruce Bennett, Attorney General of the State of Arkansas, and Frank Holt, Prosecuting Attorney of the Sixth Judicial Circuit of Arkansas, which includes Little Rock. Both the attorney general and the prosecuting attorney filed motions to dismiss, and at the commencement of the trial it was agreed that the complaint might be dismissed as to them without prejudice. Also named as members of the Pine Bluff School Board were Ralph Mitchell, Jr., and J. C. Langley. It developed that one of these gentlemen had never been a member of the Board, and that the other had resigned prior to the filing of the suit, and it was agreed that the case might be dismissed as to them.

Reduced to essentials, the claim of the plaintiffs is that the two statutes in question deprive the plaintiff Shelton and others similarly situated, and the members of ATA of liberty and property without due process of law, that they

2. The Arkansas Legislative Council is an agency of the Arkansas Legislature which functions during interims between sessions, makes studies of legislative problems, and reports thereon to the Legislature.

deny them the equal protection of the law; that they infringe upon their rights of freedom of speech, freedom of press, freedom of assembly and association and to petition for redress of grievances, and deny them privileges and immunities of citizens of the United States. It is further claimed that Shelton and the plaintiff class are threatened with irreparable injury and have no adequate remedy at law.

In their answers the defendants deny the claim of the plaintiffs that the statutes are unconstitutional; they further contend that this court is without jurisdiction, and that this is not a proper class action. In the alternative, they ask that proceedings herein be stayed until the two statutes can be construed by the Arkansas state courts.

It appears that plaintiff Shelton has been employed as a teacher in the Little Rock Public School System for a number of years, and that he is a member of the NAACP; that on April 3 of the current year he and other teachers in the Little Rock system were called upon to submit the affidavits required by Act 10; that he declined to do so on the ground that the statute violated his constitutional rights; and that subsequently he received a letter signed by three members of the Little Rock School Board advising him that his contract had not been renewed for the 1959–60 school year and would not be renewed. By reason of a somewhat peculiar situation that existed with respect to the Little Rock School Board when the suit was filed and on the day of trial, which situation we find it unnecessary to detail, there is some uncertainty with respect to the exact status of Shelton's contract and those of certain other teachers who declined to submit the Act 10 affidavits. It has been stipulated, however, that the Little Rock School Board will act in conformity with ruling State statutes, and it is plain that if those statutes stand, Shelton will inevitably feel their impact if he has not already done so. Thus, we are satisfied that Shelton's situation presents a case or controversy between him and the Little Rock School District with respect to which this court has jurisdiction.

The claim that this is not a proper class action calls for no extended comment, since it is now well settled that a suit of this kind, while not a "true class action" can be maintained for the benefit of the named plaintiff and "others similarly situated" under the provisions of Rule 23, F.R.Civ.P., 28 U.S.C.A. See the full discussion of such an action and of the effect of a judgment therein contained in 3 Moore's Federal Practice, 2d Ed., pp. 3442–3450, 3455–56, and 3465–68.

With regard to the contention that this court should not proceed herein until the statutes have been construed by the State courts, we, of course, respect the doctrine of "equitable abstention", as it is sometimes called, and it has been applied in this district not infrequently. However, this doctrine is discretionary in its application, not jurisdictional. We see no problems of statutory construction in this case which would move our discretion to stay proceedings as the defendants desire. Cf. NAACP v. Patty, D.C. Va., 159 F.Supp. 503; see also dissenting opinion of Judge Parker in Bryan v. Austin, D.C.S.C., 148 F.Supp. 563, 567. Moreover, this is contract time with the school districts in Arkansas. Both teachers and directors of those districts need to know where they stand with respect to both acts. Should proceedings herein be stayed, inevitably there would be undesirable delay and confusion likely to be accompanied by a multiplicity of suits in various sections of the State. Accordingly, we are of the view that the public interest calls for a determination of the Constitutional questions presented by the record.

While there is certain language in the complaint that may indicate that the plaintiffs feel, at least to a certain extent, that the two statutes must be read together, we feel that they should be considered separately. Cf. Garner v. Board of Public Works of City of Los Angeles, 341 U.S. 716, 720, 71 S.Ct. 909,

95 L.Ed. 1317. And in view of certain decisions of the Supreme Court presently to be mentioned, we are satisfied that Act 10 is constitutional. On the other hand, it is clear that Act 115 is unconstitutional.

Act 10, unlike Act 115, does not make past or present membership in any organization a ground for discharge of or for refusal to employ a school teacher or college professor. It simply requires the local school boards and the governing bodies of institutions of higher learning to ascertain the affiliations of their respective faculties. Once that information has been furnished, so far as Act 10 is concerned, the local board or the governing body of a college is free to take any action it may choose with respect to the employment status of a given individual.

■ A public employer has a right to know the organizations to which its employees, including school teachers, belong or have belonged, or to which they are making or have made financial contributions. This right has been recognized in Garner v. Board of Public Works, supra; Adler v. Board of Education of City of New York, 342 U.S. 485, 72 S.Ct. 380, 96 L.Ed. 517; Beilan v. Board of Public Education, School District of Philadelphia, 357 U.S. 399, 78 S.Ct. 1317, 2 L.Ed.2d 1414; and Lerner v. Casey, 357 U.S. 468, 78 S.Ct. 1311, 2 L.Ed.2d 1423.

In the Garner case the Court, in upholding a requirement that public employees sign an affidavit revealing whether they had been members of the Communist Party or of the Communist Political Action Association, and if so setting forth the dates and periods of membership, said:

"We think that a municipal employer is not disabled because it is an agency of the State from inquiring of its employees as to matters that may prove relevant to fitness and suitability for the public service. Past conduct may well relate to present fitness; past loyalty may well have a reasonable relationship to present and future trust. Both are commonly inquired into in determining fitness for both high and low positions in private industry and are not less relevant in public employment. * * *" 341 U.S. at page 720, 71 S.Ct. at page 912.

In Adler v. Board of Education of City of New York, supra, there was before the Court a challenge of the New York statutes designed to clear subversives from employment in the public school system. It was claimed that those statutes violated the freedom of speech and assembly of persons employed or seeking employment in the public schools. The Court said:

"It is clear that such persons have the right under our law to assemble, speak, think and believe as they will. American Communications Ass'n, C.I.O. v. Douds, 339 U.S. 382, 70 S.Ct. 674, 94 L.Ed. 925. It is equally clear that they have no right to work for the State in the school system on their own terms. United Public Workers of America (C.I.O.) v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754. They may work for the school system upon the reasonable terms laid down by the proper authorities of New York. If they do not choose to work on such terms, they are at liberty to retain their beliefs and associations and go elsewhere * * *" 342 U.S. at page 492, 72 S.Ct. at page 384.

A little further on in the opinion, the Court, after announcing that it was adhering to the Garner case, supra, went on to state:

"* * * A teacher works in a sensitive area in a schoolroom. There he shapes the attitude of young minds towards the society in which they live. In this, the state has a vital concern. It must preserve the integrity of the schools. That the school authorities have the right and the duty to screen the officials, teachers, and employees as to their fitness to maintain the integrity of

the schools as a part of ordered society, cannot be doubted. One's associates, past and present, as well as one's conduct, may properly be considered in determining fitness and loyalty. From time immemorial, one's reputation has been determined in part by the company he keeps. In the employment of officials and teachers of the school system, the state may very properly inquire into the company they keep, and we know of no rule, constitutional or otherwise, that prevents the state, when determining the fitness and loyalty of such persons, from considering the organizations and persons with whom they associate." 342 U.S. at page 493, 72 S.Ct. at page 385.

Garner and Adler were both adhered to less than a year ago in Beilan v. Board of Public Education, supra, wherein the court upheld the discharge of a school teacher on account of his refusal to answer questions put to him by his superintendent relative to his Communist affiliations and activities. The Court said:

"By engaging in teaching in the public schools, petitioner did not give up his right to freedom of belief, speech or association. He did, however, undertake obligations of frankness, candor and cooperation in answering inquiries made of him by his employing Board examining into his fitness to serve it as a public school teacher." 357 U.S. at page 405, 78 S.Ct. at page 1321.

■ Further on in the same opinion the Court said that there was no requirement in the Federal Constitution that a teacher's classroom conduct be the sole basis for determining his fitness, and that such fitness "depends on a broad range of factors." 357 U.S. at page 406, 78 S.Ct. at page 1322. In discharging their annual tasks[3] of selecting new teachers and determining which of the old ones should be retained in employment, Arkansas school boards and college trustees are not concerned alone with the professional training or instructional competency of their employees or applicants for employment, or even with their loyalty to this country. While membership in a subversive organization, such as the Communist Party, is, of course, a relevant factor bearing upon a person's fitness for employment as a school teacher or college instructor, other factors are relevant as well. A school board in undertaking to select teachers is entitled to take into consideration not only an applicant's competency and loyalty, but also his or her personality, habits and manner of living, and social, professional, and political background and affiliations, to the end that it may select not only competent teachers, but those whose employment or retention in employment is to the best interest of all concerned.

■ This does not mean, of course, that the Legislature can require a local school district or institution of higher learning to make inquiries of its employees or applicants for employment that are wholly irrelevant to their suitability for employment. Thus, in National Association for Advancement of Colored People v. State of Alabama, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488, cited by the plaintiffs, it was held that the Association could not be compelled by a State court to disclose its membership lists in connection with an action brought by the State on account of its alleged noncompliance with the Alabama statutes

3. In considering this case it is important to bear in mind that Arkansas, unlike certain other States, does not have any civil service system for its public school teachers. Those teachers usually are hired on a year-to-year basis, and while a wrongful discharge during a school year in breach of contract is actionable, the only specific job security that a teacher has beyond the end of a year is the statutory provision that if a teacher is not notified within 10 days after the end of a school year that his contract has not been renewed, it is automatically renewed for the following year. Ark. Stats.1947, Section 80–1304(b); Wabbaseka School District No. 7 of Jefferson County v. Johnson, 225 Ark. 982, 286 S.W.2d 841.

dealing with foreign corporations. The Court said:

"* * * The issues in the litigation commenced by Alabama * * * were whether the character of petitioner and its activities in Alabama had been such as to make petitioner subject to the registration statute, and whether the extent of petitioner's activities without qualifying suggested its permanent ouster from the State. Without intimating the slightest view upon the merits of these issues, we are unable to perceive that the disclosure of the names of petitioner's rank-and-file members has a substantial bearing on either of them". 357 U.S. at page 464, 78 S.Ct. at page 1173.

We think that the information required by Act 10 is relevant. The fact that some educators and members of the public may feel that this requirement is unwise, or unnecessary or even insulting does not mean that the statute is unconstitutional. Those are considerations of the legislative, not the judicial branch of the government. We hold, however, that the mere failure of a teacher who was a member of the National Association for the Advancement of Colored People, to furnish the affidavit required by Act 10 while Act 115 was ostensibly in effect, thereby making himself ineligible for public employment by the terms of the latter Act, did not and does not compel or justify his discharge or render him ineligible for re-employment.

Taking up Act 115, there can be no question that the Act makes any member of the NAACP ineligible for public employment in the State of Arkansas. Section 3 of the Act, which gives to any person dismissed from or declared ineligible for employment under the provisions of the Act a right to petition for an order to show cause why a hearing on such charges should not be had, does not change or modify the command of the Act. That section gives one who was dismissed or denied employment on the ground that he was a member of the NAACP, and who claims that he was not a member, an opportunity to obtain a hearing on that issue alone. Once membership is established, then discharge or a declaration of ineligibility automatically follows. Further, by the terms of the Act one who gives public employment to a member of the NAACP is subject to a fine of not more than $100 for each such offense.

Under the Fourteenth Amendment to the Constitution of the United States, as construed in Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216, and Slochower v. Board of Higher Education of City of New York, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692, the statute is clearly unconstitutional since it makes mere membership in the NAACP a ground for dismissal from or a declaration of ineligibility for public employment, regardless of whether the employee or applicant involved had any knowledge of or sympathy with the aims and purposes of the organization, as declared by the Legislature, or had actively participated in the activities found by the Legislature to be anti-social and undesirable, or whether he was completely innocent of such knowledge, sympathy or participation and had joined and was desirous of maintaining his membership in the Association out of sympathy with its publicly announced objectives which are clearly lawful.

Even if the recitals of the preamble to the statute to the effect that the NAACP is devoted to the creation of racial unrest and turmoil are taken at face value, there is no declaration that the purposes and activities of the organization are designed to overthrow the government or that they are violative of any statute.[4]

---

4. See Judge Parker's discussion of a similar preamble to the South Carolina statute involved in Bryan v. Austin, supra. With regard to the statement that the NAACP is a captive of the Communist conspiracy, it is to be noted that the Legislature did not find that such was a fact, but simply stated that a committee of the Arkansas Legislative Council had so found; and while the Attorney General

While public employing agencies have a wide if not unlimited discretion in selecting their employees, it does not follow that the Legislature can by statute require such agencies to apply a wholly arbitrary and discriminatory standard in hiring and firing. On the contrary, Wieman v. Updegraff and Slochower v. Board of Higher Education, both supra, establish that such cannot be done.

This Court, of course, cannot do otherwise than follow the decisions just mentioned. Weiman v. Updegraff involved the constitutionality of a statute of Oklahoma which required each state officer and employee, as a condition of his employment, to take an oath stating that he was not, and had not been for the preceding five years a member of any organization listed by the Attorney General of the United States as "communist front" or "subversive" and which statute, as construed by the State Supreme Court, barred persons from state employment solely on the basis of membership in such organization, regardless of their knowledge concerning the activities and purposes thereof. By an opinion in which all the Justices concurred, the Supreme Court held that the Act in suit, as thus construed, violated the Due Process Clause of the Fourteenth Amendment by making persons ineligible for public employment solely on the basis of organizational membership, regardless of their knowledge concerning the organizations to which they had belonged. In so doing the Court distinguished its prior decisions involving state legislation aimed at safeguarding the public service from disloyalty, namely, Garner v. Board of Public Works, supra; Adler v. Board of Education, supra, and Gerende v. Board of Supervisors, 341 U.S. 56, 71 S.Ct. 565, 95 L.Ed. 745.

of Arkansas testified at the trial of this case that the findings of that committee were before the Legislature when it adopted Act 115, he did not testify that the Legislature itself had ever adopted those findings as its own. Thus, it is

In the course of its opinion the Court said:

"There can be no dispute about the consequences visited upon a person excluded from public employment on disloyalty grounds. In the view of the community, the stain is a deep one; indeed, it has become a badge of infamy. Especially is this so in time of cold war and hot emotions when 'each man begins to eye his neighbor as a possible enemy.' Yet under the Oklahoma Act, the fact of association alone determines disloyalty and disqualification; it matters not whether association existed innocently or knowingly. To thus inhibit individual freedom of movement is to stifle the flow of democratic expression and controversy at one of its chief sources. We hold that the distinction observed between the case at bar and Garner, Adler and Gerende is decisive. Indiscriminate classification of innocent with knowing activity must fall as an assertion of arbitrary power. The oath offends due process." 344 U.S. at pages 190–191, 73 S.Ct. at page 218.

And in Slochower v. Board of Higher Education, supra, it was said:

" * * * In Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216, we struck down a so-called 'loyalty oath' because it based employability solely on the fact of membership in certain organizations. We pointed out that membership itself may be innocent and held that the classification of innocent and guilty together was arbitrary. This case rests squarely on the proposition that 'constitutional protection does extend to the public servant whose exclusion pursuant to

unnecessary for us to decide whether the Legislature had a right to make such a finding, or to determine what effect should be given to it had it in fact been made.

a statute is patently arbitrary and discriminatory.' 344 U.S. at page 192, 73 S.Ct. at page 219." 350 U.S. at page 556, 76 S.Ct. at page 640.

See also Sweezy v. State of New Hampshire, 354 U.S. 234, 242, 251, 77 S.Ct. 1203, 1 L.Ed.2d 1311.

Since the fact of association alone cannot be used to determine disloyalty or disqualification, it is obvious that mere membership in the NAACP cannot be made a bar to public employment.

 While the plaintiffs are entitled to a declaratory judgment to the effect that the State of Arkansas cannot constitutionally require that a person be discharged from public employment or be declared ineligible therefor merely because he belongs to the NAACP, from which it necessarily follows that public hiring officials cannot be successfully prosecuted for declining to follow such a standard, it does not follow that this Court, as a court of equity, can compel any school board to hire a person as a teacher, or to retain him in its employment, or to forbid it to discharge him. This is true because of the well-settled principle that an equity court, at least in the absence of a statute or of a situation where an employee has a vested right to or interest in his employment, will not interfere by injunction with the power of an employer to determine whom he will employ or retain in his employment. As we have seen, school teachers in Arkansas have no vested rights in their jobs, and no right of reinstatement if wrongfully discharged. If a teacher is discharged in violation of his contract, his remedy is an action for damages. Such being the case, we do not believe that injunctive relief is appropriate here, nor, from a practical standpoint, do we think it necessary at this time.

It is, therefore, by the court considered, ordered, adjudged and decreed:

1. That without objection the motions to dismiss filed herein by Honorable Bruce Bennett, Attorney General of the State of Arkansas, and by Honorable Frank Holt, Prosecuting Attorney of the Sixth Judicial Circuit of the State of Arkansas, are granted without prejudice.

2. That without objection the motions to dismiss filed by the defendants Ralph Mitchell, Jr. and J. C. Langley are granted.

3. That to the extent that the plaintiffs seek declaratory and injunctive relief with respect to Act 10 of the Second Extraordinary Session of the 61st General Assembly of the State of Arkansas, the complaint and amended complaint are without merit and are dismissed with prejudice.

4. That the prayer of the plaintiffs for declaratory relief with respect to Act 115 of the regular session of the 62nd General Assembly of the State of Arkansas be, and the same hereby is granted, and that said statute be, and it hereby is, adjudged to be invalid and unenforceable as contravening the Fourteenth Amendment of the Constitution of the United States.