Carr *v.* Young.

5-1978                                    331 S. W. 2d 701

Opinion delivered February 8, 1960.

[Rehearing denied February 29, 1960]

*Edwin E. Dunaway,* for appellant.

*Bruce Bennett,* Atty. General, by *Bill J. Davis,* Asst. Atty. General and *Mehaffy, Smith & Williams,* for appellee.

George Rose Smith, J.   This case involves the validity of the teacher-affidavit law, Act 10 of the 1958 special session.   The appeal is from a declaratory decree upholding the statute.

Two suits were consolidated in the trial court. In one the appellant Carr, an associate professor of music at the University of Arkansas, acting for himself and others similarly situated, sought a decree declaring the act unconstitutional and enjoining its enforcement by the defendants, the president and trustees of the University. The other case is a similar class suit brought by the appellant Gephardt, a vocational printing instructor at Little Rock Central High School, asking for like relief against the Little Rock Special School District and its superintendent and directors. Both plaintiffs assert that Act 10 infringes upon their freedom of speech, freedom of assembly, freedom of association, freedom of thought, and allied rights, all protected by the Fourteenth Amendment and by parallel provisions in the Arkansas constitution.

Act 10 provides that no person shall be employed as a teacher in any of the state's public schools or as a superintendent or principal in any elementary or secondary school without having first filed with the employing authority an affidavit giving the names and addresses of all organizations and associations to which the applicant has belonged within the preceding five years or to which he has paid regular dues or made regular contributions within that time. Other provisions of the act nullify any contract made in violation of the statute, permit the recovery of funds paid under such a void contract, and fix civil and criminal penalties for the willful filing of a false affidavit.

The appellants' attack upon the act may be considered in two aspects: First, is Act 10 unconstitutional on its face? Secondly, if the act is outwardly valid, does the record show that the statute was intended to be applied, and will in fact be applied, in such a way as to deprive the appellants and those they represent of their constitutional rights?

We do not find Act 10 to be invalid on its face. By § 1 of the act the legislature declared its belief that the public school system would be benefited as a result of the school authorities having the required informa-

tion about applicants for the positions covered by the statute. It cannot be doubted that the information would often be of real value to the employing school board. We are not convinced that either the federal or the state constitution compels a school board to engage its teachers without first inquiring about the matters that the act requires to be disclosed.

A similar question was presented long ago, in *McAuliffe* v. *New Bedford*, 155 Mass. 216, 29 N. E. 517, where a policeman complained of a city regulation that prohibited him from soliciting money or aid for political purposes. In the familiar words of Justice HOLMES: "The petitioner may have a constitutional right to talk politics, but he has no constitutional right to be a policeman. . . . the city may impose any reasonable condition upon holding offices within its control."

The appellants are not entitled to demand that the University and the Little Rock school board employ them without making any inquiry about organizations to which they have belonged within a period reasonably close to the date of the application. Such investigations are the usual practice among private employers, and, as the court pointed out in *Garner* v. *Board of Public Works of Los Angeles*, 341 U. S. 716, public employers are not denied the privilege of making similar inquiries. From that opinion: "We think that a municipal employer is not disabled because it is an agency of the State from inquiring of its employees as to matters that may prove relevant to their fitness and suitability for the public service. Past conduct may well relate to present fitness; past loyalty may have a reasonable relationship to present and future trust. Both are commonly inquired into in determining fitness for both high and low positions in private industry and are not less relevant in public employment. The affidavit requirement is valid."

The *prima facie* validity of Act 10 is pretty well settled by the holding in *Adler* v. *Board of Education of New York*, 342 U. S. 485, where the court sustained

a state statute forbidding the employment in the public school system of persons belonging to organizations found to be subversive. This language in the opinion is peculiarly pertinent to the case at bar:

"A teacher works in a sensitive area in a schoolroom. There he shapes the attitude of young minds towards the society in which they live. In this, the state has a vital concern. It must preserve the integrity of the schools. That the school authorities have the right and the duty to screen the officials, teachers, and employees as to their fitness to maintain the integrity of the schools as a part of ordered society, cannot be doubted. One's associates, past and present, as well as one's conduct, may properly be considered in determining fitness and loyalty. From time immemorial, one's reputation has been determined in part by the company he keeps. In the employment of officials and teachers of the school system, the state may very properly inquire into the company they keep, and we know of no rule, constitutional or otherwise, that prevents the state, when determining the fitness and loyalty of such persons, from considering the organizations and persons with whom they associate."

In the *Adler* case the statute was directed only at subversion, but the court's language dealt repeatedly with fitness as well as with loyalty. We have no doubt that a school board might ask an applicant whether he belonged, specifically, to the Communist Party, to any organization dedicated to the violent overthrow of the government, to a nudist colony, to a drag-racing club, to an association of atheists, or to other organizations that might be listed almost without number, membership in which might shed light upon the applicant's fitness to guide young minds in the schoolroom. We are not persuaded that the constitution compels the board to ask scores or hundreds of permissible questions one by one, instead of making the blanket inquiry required by Act 10.

We conclude, as did the three-judge district court in *Shelton* v. *McKinley,* D. C. Ark., 174 F. Supp. 351,

that the act is not unconstitutional on its face. We do not, of course, pass upon the wisdom of the law, for as the court said in the *Shelton* case: "We think that the information required by Act 10 is relevant. The fact that some educators and members of the public may feel that this requirement is unwise, or unnecessary or even insulting does not mean that the statute is unconstitutional. Those are considerations of the legislative, not the judicial branch of the government."

There remains the contention that Act 10, even if ostensibly valid, is subject to being used in an unconstitutional manner. Upon this point the appellants offered three witnesses. Two of them, the Attorney General, whose office assisted in the drafting of the bill, and the state senator who introduced the measure in the legislature, testified that the act was intended as a weapon against subversion. Such expressions of individual opinion are not competent to show the legislative intention, *Wiseman* v. *Madison Cadillac Co.,* 191 Ark. 1021, 88 S. W. 2d 1007, but even if the testimony were considered it would not create any doubt about the validity of the act.

The appellants' third witness, Guthridge, testified that he was a director of, and attorney for, the Capital Citizens Council, which he describes as an organization advocating states rights and racial integrity and opposing by all lawful means the desegregation decisions of the United States Supreme Court. Guthridge was interrogated by the appellants' counsel about newspaper accounts of public statements he had made concerning Act 10. In those statements, which Guthridge reaffirmed on the witness stand, he said that his organization and similar ones in the state meant to attempt to gain access to some of the Act 10 affidavits with a view to seeking to eliminate from the school system teachers who belonged or contributed to the N.A.A.C.P., the Urban League, and other organizations opposed by the Citizens Councils.

We do not think this testimony sufficient to show that the act will be applied by the state and its agen-

cies in such a way as to violate the appellants' constitutional rights. In reaching this conclusion we are not unmindful of the settled principle that a statute, even though fair on its face, may become invalid if it is administered by the state "with an evil eye and an unequal hand." *Yick Wo* v. *Hopkins,* 118 U. S. 356.

Here, however, the proof does not show any inclination on the part of any school board to use Act 10 in a discriminatory manner. The most that can be said is that at least some members of the Citizens Councils are so ill-advised as to advocate that course. "Ill-advised" is the proper term, since such an effort, if successful, would defeat its own purpose by rendering the act invalid.

It is very far from certain that efforts to misuse Act 10, if any are made, will succeed. Inasmuch as the validity of the act depends upon its being construed as a *bona fide* legislative effort to provide school boards with needed information, it necessarily follows that the affidavits need not be opened to public inspection, for the permissible purpose of the statute is to enlighten the school board alone. The only testimony on this point indicates that the affidavits are not being publicized; the president of the University testified that its affidavits are being treated as confidential and are being kept under lock and key.

Moreover, even if secrecy should not be observed in every instance it still cannot be surely predicted that any teacher will be eliminated from the school system. Unlike the statute upheld in the *Adler* case, *supra,* which mandatorily forbade the employment of persons belonging to subversive organizations, Act 10 does not affirmatively require a school board to take any action, no matter what associations an affidavit may reveal. Thus in order for us to invalidate Act 10 at this stage of its existence we should have to assume, wholly without proof, that conscientious and responsible school board members will inevitably yield to a nebulous public insistence that the act be applied discriminatorily and in disregard of recognized constitutional guaranties. We

are aware of no principle that requires us to attribute improper motives to public officers as a means of enabling us to declare an act invalid.

Affirmed.