PULASKI COUNTY BOARD OF EQUALIZATION *v.*
AMERICAN REPUBLIC LIFE INSURANCE.

5-2305                                              342 S. W. 2d 660

Opinion delivered February 13, 1961.

*Mehaffy, Smith & Williams,* by *William H. Bowen*
and *Jerry T. Light, John Jernigan,* Prosecuting Attorney,
*John W. Barron, Jr.,* Deputy Prosecuting Attorney, for
appellants.

*Wright, Lindsey, Jennings, Lester & Shults,* for
appellee.

GEORGE ROSE SMITH, J.  The principal issue presented
here is the constitutionality of Act 396 of 1955, which

provides a special procedure for the taxation of shares of stock in life insurance companies, banks, and trust companies. Ark. Stats. 1947, §§ 84-510 and 84-511. The present controversy over the proper assessment of the stock in the appellee corporation has gone forward in the usual way, proceeding from the county assessor's original assessment to the equalization board and thence to the county court and the circuit court. This appeal is from a judgment holding the act in question to be invalid and exempting the appellee from compliance with its provisions.

A preliminary issue is raised by one of the appellants, the Little Rock School District. When this proceeding reached the circuit court the school district sought to intervene, asserting that it is one of the agencies entitled to share in the revenues derived from the property tax and that it therefore has a direct interest in the outcome of the case. The circuit court refused to permit the intervention, although counsel for the school district were allowed to participate in the case. It is now contended that the district was entitled to intervene as a matter of right.

The court below was right in refusing to permit the intervention. Necessary parties may intervene as a matter of right, but the question of permitting others to enter a case lies within the court's discretion. "Intervention is not a common law right, but has long been recognized by the courts upon the principle that a party should be permitted to do that voluntarily which, if known, a court would require to be done." *Board of Directors of St. Francis Levee Dist.* v. *Raney,* 190 Ark. 75, 76 S. W. 2d 311. The school district is obviously not a necessary party to every proceeding for the determination of the assessed value of taxable property. By statute the prosecuting attorney has the duty of representing the public in a proceeding such as this one. Ark. Stats., § 84-708. If the school district may intervene as a matter of right the same privilege would have to be extended to

the county, the various cities, other school districts, the holders of municipal bonds, and all the other beneficiaries of property taxation. There is no reason at all for saying that the circuit court abused its discretion in this case.

Turning to the merits, the basic purpose of Act 396 is to subject certain shares of stock to property taxation. To this end the president, secretary or principal accounting officer of each domestic life insurance company and of each bank or trust company is required to file with the assessor of the county where the company's principal office is situated a sworn statement setting forth certain specified information about the market value of the corporation's outstanding stock. The ensuing property tax is to be paid by the corporation, but the act declares that its purpose is to recognize the shares of stock as the property to be taxed. In harmony with this view the statute empowers the corporation to pass the tax on to its stockholders by deducting its amount from any dividend accruing on the stock. The act provides a criminal penalty for an officer's failure to file the required return and also directs that the corporate charter be forfeited.

Act 396 was evidently patterned after Act 262 of 1917. The earlier statute, however, was a comprehensive measure purporting to apply to the shareholders of all corporations. Section 1 of the 1917 act provided for the assessment of stock in domestic insurance companies, while Section 2 applied to stock in all other corporations, domestic and foreign. In two decisions of this court Section 2 was held unconstitutional, first as to foreign corporations and then as to domestic ones. *State ex rel. Atty. Gen.* v. *Lion Oil Ref. Co.*, 171 Ark. 209, 284 S. W. 33; *State ex rel. Atty. Gen.* v. *Williams-Echols Dry Goods Co.*, 176 Ark. 324, 183 Ark. 1150, 3 S. W. 2d 340. Finally, in 1954, these cases were construed as having also invalidated Section 1 of the 1917 act. *Mashburn* v. *Auto Finance Corp.*, 224 Ark. 45, 271 S. W. 2d 621. At the next meeting of the legislature Act 396 of 1955 was

adopted. Thus there is reason to think that the legislature enacted Act 396 as a substitute for Section 1 of the 1917 statute and by oversight failed to realize that the remainder of what had originally been a comprehensive statute had previously been held to be invalid.

With this background we come to the constitutional question, which is squarely presented and thoroughly discussed in the briefs. As a secondary contention, however, the appellee argues that even if the statute is valid its provisions for certain deductions from the market value of the stock should be so interpreted as to exempt this particular corporation from the tax. We find it unnecessary to explore this perplexing problem in statutory construction, for we are firmly of the view that the judgment must in any event be affirmed upon the controlling constitutional issue. The validity of Act 396 is clearly a matter of public interest, and we see no reason for seeking to postpone a decision of this question, especially as it would certainly be presented again within the immediate future. See *Glover* v. *Henry,* 231 Ark. 111, 328 S. W. 2d 382.

The main challenge to the statute is based upon this language in Article 16, § 5, of the Arkansas Constitution: ''All property subject to taxation shall be taxed according to its value, that value to be ascertained in such manner as the General Assembly shall direct, making the same equal and uniform throughout the State. No one species of property from which a tax may be collected shall be taxed higher than another species of property of equal value.'' The section then enumerates all the classes of exempt property, such as that used for public purposes, charitable purposes, etc., and the next section prohibits any other exemption from the property tax.

The appellee forcefully contends that Act 396 is in direct conflict with the constitution in that it singles out the stock of life insurance companies, banks and trust companies for the assessment and collection of a

property tax. It is pointed out that the substantial burden of taxation imposed by this act upon the stockholders of a few selected corporations is not shared by many other persons similarly situated, such as the stockholders in the various other kinds of insurance companies, in building and loan associations, in mercantile corporations, and, in fact, in every other type of business corporation.

The appellants' attempt to defend the validity of the statute really consists of two arguments which must be examined separately, as they are not entirely consistent with one another.

On the one hand the appellants take the position that the statute is valid even though it involves some discrimination, because the legislative classification is said to be a reasonable one. Here it is pointed out that life insurance companies, banks, and trust companies are all financial institutions that customarily maintain extensive investments in tax-exempt United States bonds. This situation results in the payment by these corporations of relatively small income taxes and personal property taxes. Hence, the appellants say, the legislature was justified in subjecting the shareholders in these companies to a property tax that is not imposed upon the owners of other corporations.

This argument rests upon a basic misconception of the constitutional clause in question. In the levy and collection of property taxes classification is permissible only when it does not run counter to the fundamental requirement of equality. The property of public utilities, for example, may be assessed differently from other property, owing to the peculiar difficulties incident to the valuation of such utilities. But the differing methods of assessment must still result in all property of the same value being taxed at the same rate. This point was made clear in *Hays* v. *Mo. Pac. R. Co.*, 159 **Ark. 101,** 250 S. W. 879: "It is true that property such as railroads

may be classified for taxation and assessed by different methods and by different officers from those assessing other property. But the object is nevertheless the same, and that is to arrive at the value of the property and tax it according to its value, making the same equal and uniform throughout the State. While exact equality in taxation cannot be achieved, intentional inequality of assessments violates the mandate of the Constitution in question and invalidates the tax."

The language of the constitution is too plain to be misunderstood: "No one species of property . . . shall be taxed higher than another species of property of equal value." It could not seriously be contended that shares of stock in a life insurance company might constitutionally be taxed at twice the rate applicable to fire insurance company shares of equal value. Still less can it be argued that the one class of stock may be subjected to a tax from which the other class is wholly exempt. Among our uniform holdings to this effect a recent example is *McArthur* v. *Smallwood,* 225 Ark. 328, 281 S. W. 2d 428. There we held that the constitution prevents the legislature from exempting state bonds from property taxation, when privately owned.

The appellants' alternative defense of Act 396 narrows down to an insistence that this statute actually involves no discrimination when it is considered in the light of our tax laws as a whole. In substance it is contended that all personal property is required by law to be assessed for taxation, and therefore it is immaterial whether the assessment and payment are made by the corporation itself, under Act 396, or by the stockholder under the general laws.

This argument is unsound. To begin with, our general corporation law provides that no stock issued by a corporation created under that act shall be taxed for any purpose when owned by a nonresident of the state. Ark. Stats., § 64-1004. Thus the statutes as a whole involve

discrimination in this respect: A nonresident who owns stock in an ordinary business corporation is not subject to any property tax upon his holding, but under Act 396 a nonresident who owns stock in a life insurance company is compelled to pay a property tax upon his holding.

Counsel's only answer to this inconsistency in the law is that we should declare this section of the general corporation statute to be invalid, as violating the constitutional prohibition of exemptions other than those granted by the constitution itself. Apart from our disinclination to strike down one act simply as a means of upholding a different act, it is evident that the mere elimination of a section of the general corporation law would not end the discrimination created by Act 396.

It is apparent that Act 396 would prove to be an efficient tax-gathering measure, for delinquency carries a criminal penalty and a forfeiture of the corporate charter. Hence the stockholders of life insurance companies, banks and trust companies, would in practice be compelled to pay the taxes levied by Act 396. By contrast, however, the stockholders of other corporations receive more lenient treatment, as the general laws for the assessment of personal property do not carry severe penalties for disobedience. Ark. Stats., §§ 84-424, 84-428, and 84-440. It is a matter of common knowledge that intangible personal property is actually not assessed at all in many instances, and certainly the voluntary assessment of such property does not reach the degree of uniformity that could be expected under Act 396. Consequently the situation created by Act 396 is analogous to the familiar rule that statutes, although ostensibly fair, may become invalid as a result of inequalities in administration. *Carr* v. *Young*, 231 Ark. 641, 331 S. W. 2d 701.

Finally, even if we should assume that the voluntary assessment of corporation stock pursuant to general

law would be just as uniform as the compulsory assessment under Act 396, the county and the other beneficiaries of the general property tax are still in no better position to defend Act 396. For if this assumption be true then no revenue will be lost as a result of the invalidation of Act 396, inasmuch as it is being assumed that the stockholders in life insurance companies and the other concerns falling within Act 396 will then voluntarily make the same assessments and pay the same taxes that would result from the enforcement of Act 396. Thus it conclusively appears that the appellants would gain nothing if there really existed the only conceivable set of facts upon which Act 396 could be sustained.

Affirmed.

McFADDIN, J., dissents.

McFADDIN, J., dissenting and concurring. This suit is an attack by the appellee Insurance Company on Act No. 396 of 1955, as amended by Act No. 269 of 1959, all as now found in § 84-510, Ark. Stats.; and I will hereinafter refer to the section of the statutes. The Insurance Company attacked the statute on three grounds: (1) it violated the Arkansas Constitution; (2) it violated the Federal Constitution; and (3), even if constitutional, the words ''all real estate'' mean all real estate, whether in Arkansas or in some other jurisdiction. The majority opinion invalidates the statute on the first point urged by the Insurance Company, i.e., violation of the Arkansas Constitution. I disagree with that holding; and, therefore, I dissent.

I. *The Unconstitutionality Of The Statute.* The majority holds that § 84-510, Ark. Stats. conflicts with that part of Art. 16, § 5 of the Constitution, which provides that, ''No one species of property . . . shall be taxed higher than any other species of property of equal value. . . .'' I maintain that under the taxing statutes of Arkansas, the Life Insurance Company stock here sought to be taxed is *not* taxed higher than is the

stock of any other corporation, and that is the first point to which I direct my remarks.

Under the § 84-510, Ark. Stats.[1] here involved, life insurance companies, banking associations, and trust companies report the value of the shares of capital stock. But after the total valuation figure is reported, then 20 per cent. thereof is fixed as the assessment value, and then the millage is determined on such assessment value. That is exactly the same procedure that is used in taxing all other property in this State subject to taxation. In § 84-428, Ark. Stats., in discussing the rules for valuation, the whole procedure is outlined, and it is stated that the person making the return will list his stocks and bonds. But in § 84-424, Ark. Stats. it is stated that a person will list all of his stocks and bonds except "any share or portion of the capital stock . . . of any company . . . which is required to list or return its capital and property for taxation in this State." In other words, all shares of stock are to be listed by the individual taxpayer, *except those shares of stock on which a capital stock tax has been paid by the corporation.* So the capital stock tax paid by the corporation in this case does not result in a higher tax rate than is paid by the individual on other shares of stock.

There are several types of corporations which pay the direct capital stock tax, so that the individual shareholder is not required to assess the shares he holds in such companies. This is true of building and loan associations (under § 84-507), and of bridge companies, savings banks, etc. (under § 84-501, Ark. Stats.). Therefore, § 84-510, Ark. Stats.—contrary to what the majority says—does not result in a law requiring the assessing of life insurance company stock and bank stock at a different or higher rate than that of any other stock. The only difference is, that the State has found that it is more convenient to have

---

[1] I forego any discussion as to the holdings in *State* v. *Lion Oil Co.*, 171 Ark. 209, 284 S. W. 33; *State* v. *Williams-Echols*, 176 Ark. 324, 183 Ark. 1150, 3 S. W. 2d 340; and *Mashburn* v. *Auto Finance*, 224 Ark. 45, 271 S. W. 2d 621. It is my view that the absence of a severability clause in the statute caused the decisions in the two last cited cases.

certain corporations pay the tax and charge it back against the stockholders. The State has a right to determine whether the individual shall pay his tax personally on his own stock, or whether the company shall pay the tax on the stock and charge it back against the stockholder. It is merely a question of the application of the principle of the withholding tax, or the sales tax. The sales tax is paid by the purchaser but the merchant acts as the agent of the State in collecting and remitting the tax to the State, and we have held that such method of collection is constitutional. *Wiseman* v. *Phillips,* 191 Ark. 63, 84 S. W. 2d 91.

In the case at bar, the Life Insurance Company operates as the agent of the State to collect the tax from the stockholder and remit the tax to the State. The rule is well recognized that such procedure is valid. In 51 Am. Jur. 719, "Taxation" § 801, in discussing the validity of statutes requiring the corporation to pay the tax on the shares, the text reads:

"State statutes which impose on corporations the duty to pay taxes levied against the individual shareholders upon the shares held by them, giving the corporation a remedy over against the stockholder by way of a lien upon his stock and/or a right or reimbursement out of future dividends, have been upheld against various constitutional objections. While most of such statutes involve taxation of bank shares, the rule has been applied to taxation of shares of other corporations, such as trust companies, loan and investment companies, and insurance companies, and no reason is perceived for assuming that there is any difference in principle between statutes taxing bank shares and statutes taxing the shares of other kinds of corporations or of corporations generally."

We upheld the validity of such form of taxation in *State* v. *Bodcaw Lumber Co.,* 128 Ark. 505, 194 S. W. 692. Back as early as 1883, we had a statute in Arkansas (§ 84-501, Ark. Stats.) which provided for a capital stock tax against banks. As previously mentioned, we still have

statutes governing building and loan associations and some other companies; and I cannot see how the majority can say that the challenged statute is unconstitutional without *ipso facto* impairing all of the statutes affecting similarly classified companies.

The majority opinion makes reference to § 64-1004, Ark. Stats., which is a portion of our *Business Corporation Law,* and which says that stock issued under the Business Corporation Statute shall not be taxed for any purpose when owned by a non-resident of the State. But the corporations with which we are concerned in this case are not organized under the Business Corporation Statute. We are dealing here with banks, life insurance companies, and building and loan associations; and each of these is organized under a statute entirely distinct from the Business Corporation Statute, which is § 64-1004, Ark. Stats. There is no language, that I have been able to find in the statutes for the organization of banks, insurance companies, and building and loan associations, which say that nonresident stockholders of those corporations shall never pay a tax on their stock. That provision is peculiar to business corporations. As a matter of fact, the appellee Insurance Company concedes on page 20 of its brief in this case:

"Appellee is not contending under this principle that Arkansas does not have jurisdiction to place a non-discriminatory tax on shares of stock owned by non-residents in domestic corporations."

The majority opinion says:

"It is a matter of common knowledge that intangible personal property is actually not assessed at all in many instances, and certainly the voluntary assessment of such property does not reach the degree of uniformity that could be expected under Act 396."

There is nothing in the record in this case to support the above quoted statement. On the contrary, we have cases in Arkansas—recent cases—that the State is attempting

to have correctly assessed and taxed on a uniform basis of 20 per cent. of valuation *all* the property subject to taxation in this State.[2] If the quoted statement above—*i.e.*, "common knowledge"—is to be used to support a decision in this case, then the Court could hold that all tax statutes are void because: "It is a matter of common knowledge that . . . the property is actually not assessed at all in many instances, . . ."

The last paragraph of the majority opinion reasons that if § 84-510 is stricken, then the stock will be assessed by the individual owners and no loss will occur. That is an *"ad hominem"* argument. The Legislature has a right to decide how the tax will be collected and it is not for this Court to strike down a valid taxing measure because the property might be taxed some other way. Besides, we are considering in this case a tax that was due in 1960 on valuations in 1959, and to strike out § 84-510 is to allow some property to escape taxes for at least two years. I cannot see how the language in the majority opinion should be of compelling importance. Furthermore, if it is "common knowledge" that intangible personal property is not actually assessed, then the concluding paragraph of the majority opinion loses its force altogether, because, when § 84-510 is stricken, the "common knowledge" argument would leave the property free of taxation.

To argue further would unduly prolong this dissent. I respectfully dissent from all of the majority opinion which holds that § 84-510, Ark. Stats. is unconstitutional.

II.   *The Meaning Of The Words "All Real Estate" As Contained In The Statute.* Even though I am firmly convinced that the statute is valid, nevertheless, I am of the opinion that the decree in this case should be affirmed because of the factual situation which involves the words, "all real estate", as found in Sub-division (6) of the

[2] Two such recent cases are: *St. Louis-San Francisco Ry. Co.* v. *Ark. Public Service Comm.,* 227 Ark. 1066, 304 S. W. 2d 297; and *Kansas City So. Ry. Co.* v. *Ark. Commerce Comm.,* 230 Ark. 392, 323 S. W. 2d 193.

statute. The majority opinion never discusses this point; but it is the point that should have received first consideration in the case, because it is a settled rule that constitutional questions are discussed only when the case cannot be decided on another ground. See *McLeod* v. *Dilworth,* 205 Ark. 780, 171 S. W. 2d 62; and *Wood* v. *Henderson,* 225 Ark. 180, 280 S. W. 2d 226; and cases there cited. Even though the majority opinion proceeds in opposition to the rule of these cases, it is my view that this case can easily be decided without considering any constitutional question.

The American Republic Life Insurance Company, in accordance with § 84-510, Ark. Stats., reported that the value of all of the shares of its stock was $1,300,000.00; and that the assessed value of all real estate owned by the Company was $1,431,890.00. Deducting the assessed value of the real estate from the capital stock, there was left a negative figure of $131,890.00. In the trial of the case, the Insurance Company listed each item of real estate and the assessed value thereof. The real estate was located in Ohio, Texas, New York, and Florida. None of the real estate was located in Arkansas. The Board of Equalization, as well as the County Court on appeal, took the position that the words "all real estate" meant only real estate *located in Arkansas;* and, on that basis, fixed the assessed valuation of the stock at 20 per cent. of the value of the shares, without any deduction for real estate. It is my view that the words, "all real estate", mean all real estate, *wherever located.* Because of that conclusion, there would be no capital stock tax due by the appellee Insurance Company; and this is the sole basis on which I agree to an affirmance of the case.

Section 84-510, Ark. Stats. says that the insurance company shall state, " (5) the aggregate value of all shares of stock. (6) The assessed value of all real estate owned by the company . . . the sixth item shall be deducted from the fifth item, and the remainder shall be taken as the basis for assessing the shares of stock of said company

. . ." The facts in this case are undisputed. The only question is, whether the words, "all real estate owned by the company," mean only real estate in Arkansas or mean real estate wherever located. To say the least, the words, "all real estate," should mean "all"; and if the words do not so mean then there is an ambiguity in the statute. In the statutory construction of revenue laws, taxing statutes must be construed most strongly against the sovereign and most liberally in favor of the taxpayer, and any ambiguity in a tax statute must be resolved in favor of the taxpayer and against the taxing power. See *Scurlock* v. *City of Springdale,* 224 Ark. 408, 273 S. W. 2d 551; *Thompson* v. *Chadwick,* 221 Ark. 720, 255 S. W. 2d 687; and cases there cited. The words, "assessed value of all real estate owned by the company," as found in Sub-division (6) of the statute, would clearly mean all real estate, wherever found, unless the words, "all real estate," have such a definite judicial interpretation that they mean only "all real estate in Arkansas." In *State* v. *Williams-Echols,* 176 Ark. 324, 183 Ark. 1150, 3 S. W. 2d 340, in discussing the words, "all corporations," we said: "The language is plain, and refers to all corporations."

The appellant cites the cases of *State* v. *Bodcaw Lbr. Co.,* 128 Ark. 505, 194 S. W. 692; *Crossett Lbr. Co.* v. *State,* 139 Ark. 397, 214 S. W. 43; and *State* v. *Gloster Lbr. Co.,* 147 Ark. 461, 227 S. W. 770, as holding that in previous statutes involving tax on capital stock we have held that the words "all real estate" mean only all real estate in Arkansas. It would unduly prolong this opinion to discuss these cases and the particular statutes involved. It is sufficient at this time to say that they do not definitely settle the point adversely to the appellee Insurance Company in this case. So, I would affirm the Circuit Court judgment on the facts here presented, and avoid all constitutional matters. The Circuit Court and the majority of this Court achieved the correct result, but each by a process of reasoning with which I do not agree.