AMERICAN BAUXITE COMPANY *v.* BOARD OF EQUALIZATION OF SALINE COUNTY.

Opinion delivered June 21, 1915.

1. TAXATION—MINERALS AND ORES.—The statutes of the State make no provision for the assessment for taxation of ores or minerals, apart from the land.

2. TAXATION—MINERAL LANDS—"MARKET VALUE."—The assessed valuation of mineral lands for purposes of taxation is dependent upon the determination of their market value. Kirby's Digest, § 6974.

3. TAXATION—LANDS—"MARKET VALUE."—The term "market value," as used in the statute governing assessments of land for taxation means the price which the land will bring when offered for sale in the market; it is the highest price which those having the ability and the occasion to buy, are willing to pay.

4. TAXATION—LAND—MARKET VALUE.—In determining the market value of land for purposes of taxation, the character of the land may be taken into account, as well as the uses to which it may be put, the character of the soil, the timber growing on the surface, as well as the ores hidden beneath the surface, the accessibility of the land, its development, its proximity to other lands which have been so developed as to add to its value, and the quantity of other lands of a similar character adjacent to it, which would be calculated to make it more attractive to prospective purchasers, together with any other fact or circumstance which affects the property's value.

5. TAXATION—MINERAL LANDS—MARKET VALUE.—In determining the market value of mineral lands for purposes of taxation, the as-

sessor may take into account the quantity of the ore, the facilities for, and the cost of mining it, as well as any other fact or circumstance which would likely make such lands a more attractive proposition to a prospective buyer.

6.   TAXATION—ASSESSMENT—MARKET VALUE—MINERAL LANDS—INCOME—PRODUCTION.—The matters mentioned above are to be considered only for the purpose of determining market value; the income-producing quality of the land enters into the consideration of the question of market value, but the income is not the thing assessed, property is assessed whether it produces income or not, and property is not taxed according to its income, and, the question of income is of importance only as it relates to and affects the market value.

7.   TAXATION—MINERAL LANDS—VALUE OF ORE—SHIPMENT OUT OF STATE.—In arriving at a proper assessment of mineral lands, the uses and value of the ore, taken from the land, and shipped out of the State, can not be taken into account for any purpose other than to determine the value of the land from which it is extracted.

8.   TAXATION—MINERAL LANDS—MARKET VALUE—MINING CORPORATION.—Tracts of mineral lands in a certain county, belonging to a mining corporation, are to be assessed for taxation just as other similar tracts of land in that county are assessed, that is, according to the market value of each separate parcel; and such lands are not to be assessed according to the proportionate value of the same to the lands and property of the corporation, situated in other states.

Appeal from Saline Circuit Court; *W. H. Evans,* Judge; reversed.

*Mehaffy, Reid & Mehaffy* and *Rose, Hemingway, Cantrell, Loughborough & Miles,* for appellant.

1.   The taxing authorities of Saline County should have taxed each separate tract of land involved in this appeal according to the market value of that tract. Article 16, § 5, Constitution; Kirby's Dig., § 6974; 62 Ark. 461, 463. As to what constitutes "market value," see 49 Ark. 381, 390; 25 N. J. Eq. 144-147; 27 Atl. 1057; 30 Pac. 111, 49 Kan. 17; 6 Sup. Ct. 801, 805; 117 U. S. 379; 29 L. Ed. 924; 38 Atl. 108, 90 Me. 193; 74 S. W. 370, 373; 101 Mo. App. 32; 36 Atl. 892, 60 N. J. Law 70.

The "unit theory" of taxation of appellant's property attempted to be applied by appellee, would not only be contrary to our Constitution and laws, but to the Constitution of the United States as well, as it would result

in the taxation of property outside of the State.   188 U. S. 385; 198 U. S. 341; 199 U. S. 194, 204.

2.   Thirty-five per cent of the market value was the basis of valuation in Saline County in 1913, and the court, at appellant's request, should have made a finding of the valuation on thirty-five per cent of the market value.

*George Vaughan* and *Wm. L. Moose,* Attorney. General, for appellee.

1.   The unit rule of valuation is the exclusive method provided for the primary ascertainment of the value of all corporate property for tax purposes.   It is a rule that has been approved by this court.   78 Ark. 192; Acts 1907, p. .1225; 94 Ark. 235; article 16, sections 5, 7 Constitution. And this doctrine is supported by many eminent authorities.   37 L. R. A. 371, notes on 63 Ark. 576; Beale on Foreign Corporations and the Taxation of Corporations, Both Foreign and Domestic, § 507; Judson on Taxation, 265, § § 239, 240, 249, 251, 260; 11 Cyclopedia of U. S. Supreme Court Reports, 449; Gray on Limitation of Taxing Power, § 61; 65 Mo. 502; 190 U. S. 413, 47 L. Ed. 1116. The Supreme Courts of numerous States have held that no distinction is justified between a foreign corporation doing business in a State, and one organized within the State, and have applied the unit rule for the apportionment of assets of foreign corporations.   116 N. C. 441, 21 S. E. 423; 39 S. E. (N. C.) 18; 143 U. S. 305; 159 N. Y. 70, 45 L. R. A. 126; 161 N. Y. 52; 185 N. Y. 546; 133 N. Y. 323; 104 Miss. 381; 55 N. Y. S. 317; 109 *Id.* 868.

2.   The value of mineral lands consists largely, if not exclusively, in the value of the underlying ores, and ordinary rules for the appraisement of real estate do not apply.

To assess each separate tract of land involved in this appeal "according to its market value," is a loose method not adapted to mineral lands.

How can each separate tract be assessed "according to its market value" when there has been no sale or transfer for twenty years?

In valuing mineral lands for tax purposes, the basis is the actual or true value, as limited or defined by the

"market value" of the ore contents.  162 N. Y. 327; 17 L.
R. A. 33, 37; 123 Wis. 61; 7 So. 509; 84 Atl. 761; 138 N. W.
707; 104 Pac. 180; 229 Pac. 460; 100 N. E. 561, 563.

As to the valuation of interstate properties, see 10
Atl. 849; 51 N. H. 455; 85 Me. 330; 21 L. R. A. 525; 66 N.
H. 562; 90 Me. 60; 91 N. E. 638; 63 N. W. 746; 131 N.
W. 669.

3.   The unit rule prescribed by Kirby's Digest, § §
6936, 6937, is applicable to the valuation of appellant's
property.  The principles applicable in cases dealing with
the property of express, railroad and telegraph compa-
nies, banks and all other industrial corporations organ-
ized for profit, also rightfully apply to this case.  29 S.
W. 116; 103 Pac. 341; 90 N. W. 298, 300; 106 S. W. 247;
49 So. 404; 78 N. W. 1032; 64 N. E. 661.

SMITH, J.   This is an appeal from a judgment of the
circuit court of Saline County, fixing the values for taxa-
tion for the year 1913 of certain tracts of land belonging
to the appellant, the American Bauxite Company.  The
county assessor assessed the lands at an aggregate valu-
ation of $47,000,000, and upon an appeal from this assess-
ment to the board of equalization, the valuation was re-
duced to approximately $2,500,000.  This valuation was
arrived at by the board of equalization by estimating that
appellant's lands contained practically 5,000,000 tons of
commercial bauxite, which had a value of $1 a ton, and
50 per cent of this amount was taken as the proper valu-
ation to assess against appellant's lands upon the theory
that property situated in that county was assessed at 50
per cent of its actual value.

An appeal was taken to the county court, where the
assessment of the equalization board was sustained, and
an appeal was prosecuted from the judgment of that court
to the circuit court, where the valuations were reduced to
an aggregate of $623,100, and this appeal has been prose-
cuted from the judgment of the court fixing these valua-
tions.

The proof shows that the appellant company paid as
high as $1 per ton royalty for bauxite, but that this was
the highest royalty paid in any case.

No attempt is now made to justify the assessment made by the county assessor, but it is insisted upon the cross-appeal which was taken in this case that the judgment of the circuit court should be set aside and the assessed value, as fixed by the board of equalization, and by the county court, should be declared the true and proper valuation.

Exceedingly interesting briefs have been filed in this case, and a great many questions, both of law and fact, are discussed therein; but we find it unnecessary to review all these questions in this opinion.

The record in the case is singularly free from questions of veracity, or, for that matter, disputed questions of fact, and the appellant company appears to have manifested a most commendable frankness and candor in the production and exhibition of evidence showing the operation of its own business, and that of affiliated concerns engaged with it in the reduction of its raw material to the finished product.

Bauxite is a term given to an earth that contains aluminum in sufficient quantities to make it worth working for the extraction of aluminum. It is shown that aluminum is the third most common element in the earth, but for bauxite to have commercial value, it must contain as much as 55 per cent alumina, and not exceeding 7 per cent silica, an element the presence of which renders difficult and expensive the extraction of alumina.

The lands in question are owned by the American Bauxite Company, but it is shown that the Aluminum Company of America owns most of the stock of the appellant company, and, in addition, also owns the controlling stock of other corporations engaged in carrying the bauxite through intermediary processes. It is shown that at one time the process for the reduction of bauxite was monopolized by a patent, but that this monopoly expired with the expiration of the patent in 1903, since which time neither the aluminum company nor any other company has any special privileges from patents or secret processes, and the industry is now one which is open to any

who desire to enter it, and that there is competition in the production of aluminum, although the aluminum company was shown to be the principal concern engaged in its manufacture.

We are of opinion that, even though '$1 per ton was a fair royalty value of all the bauxite owned by the appellant company, and the proof shows that this would be an excessive value for this bauxite when considered as a whole—that value could not form a proper basis for assessment, as this royalty is not paid until the bauxite has been mined, whereas the proof in the present case shows that with the facilities at hand, the appellant company will be engaged anywhere from thirty to fifty years in mining its bauxite.

Appellees insist, however, that the valuation of the several tracts of land should be arrived at by treating them as part of a profit-producing plant, of which the property of the Aluminum Company of America and all of its subsidiary companies should be treated as a unit, and that the proportion of the whole borne by the market value of the lands in Arkansas to the entire value should be added to the market value of the lands in Arkansas; and the theory is also urged that for the purposes of taxation the profit-producing capacity of the industry should be capitalized, and that the sum of money upon which a reasonable dividend is earned or profit yielded should form the basis for the assessed valuation. Bearing upon this question, numerous experts have testified, and much valuable and interesting information has been collected, and the history of this industry is gone into in great detail and in a most interesting manner. The proof shows the cost of mining a ton of bauxite, and the method and cost of its reduction to the finished product, and it is urged that these facts should be considered in determining the proper valuation for purposes of assessment of the lands in question, inasmuch as the earning of these profits is dependent upon the extraction of the bauxite from the lands in question. But the proof also shows that bauxite is found in commercial quantities in several other States.

It was shown that the appellant company bought lands in Saline and Pulaski counties, and that at the time of their purchase, the presence of the bauxite was known, and, indeed, the evidence rather tends to show that the lands do not contain the quantity of bauxite which they were estimated to contain at the time of their purchase. The appellant company paid something less than $600,000 for these lands, of which about $500,000 was paid for the 5,000 acres of land in Saline County, and these lands were assessed by the manager of the appellant company for the year 1913 at a total valuation of $492,000, or practically what the appellant company paid for them. It is not shown that there had been any considerable enhancement in the value either of bauxite or bauxite lands since appellant's purchase; yet the proof does show that the appellant company had expended large sums of money in the development of its properties, and that the result of this expenditure was to increase the market value of all of its bauxite lands. The appellant company secured the services of a mining engineer, who appraised the value of all of its property situated in Saline County, and according to his report, the assessment made by the appellant company equalled at least 50 per cent of the market value of the property.

A Mr. Gibbons, who was the superintendent of the appellant company, testified in great detail in regard to all of the facts which would enter into a consideration of the value of the lands, and only the value of the lands is involved in this litigation, as the valuation of all the appellant's personal property was agreed upon. This witness Gibbons, testified in a manner to carry conviction, and his testimony appears to be undisputed on the question of the market value of the lands, and the court made the following finding of fact in regard to his testimony:

"The court finds that the witnesses, Col. J. R. Gibbons and Mr. W. A. Rucker, are familiar with the market value of bauxite lands, and with the market value of the several tracts involved in this proceeding; and the court further finds that the testimony of each of said witnesses

is candid and truthful. By the term 'market value,' as used in this finding, the court means the price that could be obtained for each tract, considered separately and without relation to the plant, after allowing the vendor a reasonable time to find a purchaser."

This finding appears to be no mere compliment paid the evidence of Colonel Gibbons, but a finding of fact fully justified by the evidence. So far as the assessment by the equalization board was concerned, the court made the following finding of fact:

"6. The court finds that the equalization board, in making its assessment in this case, did not assess the market value of the several tracts, but proceeded on the arbitrary basis of making an estimate of the quantity of bauxite on the several tracts of land, and multiplying this estimate by $1 per ton, and dividing this product by two to give a 50 per cent value of the several tracts."

But the court refused to make the following declaration, which we number A:

"A. There is no warrant in law for treating the several tracts of land owned by the American Bauxite Company as a part of a unit of the Aluminum Company of America, and attempting to assess the said several tracts of land of the American Bauxite Company according to any proportion of the value that each or any of them may bear to all the other property or holdings of the Aluminum Company of America, nor is there any warrant for an attempt to capitalize the earnings of the Aluminum Company of America, and by this method ascertain the value of all its holdings and apportion part of the value of the whole against any or several or all of the tracts of land of the American Bauxite Company in Saline County; but the said several tracts of land of the American Bauxite Company in Saline County are to be assessed just as other similar tracts of land in Saline County are assessed, that is, according to the market value of each separate parcel."

The correctness of the action of the court in refusing to make this declaration presents the real question in the case.

Article 16, section 5, of the Constitution, provides that "All property subject to taxation shall be taxed according to its value, that value to be ascertained in such manner as the General Assembly shall direct, making the same equal and uniform throughout the State. No one species of property from which a tax may be collected shall be taxed higher than another species of property of equal value. * * *"

(1) Pursuant to this provision of the Constitution, the Legislature enacted that "Each separate parcel of real property shall be valued at its true market value in money, excluding the value of crops growing thereon; but the price at which such real estate would sell at auction, or at a forced sale shall not be taken as the criterion of such true value." Section 6974, Kirby's Digest. But the statute has made no provision for the assessment of ore or minerals apart from the land.

(2) It thus appears that the assessed valuation of the appellant's lands should be made dependent upon the determination of their market value, and the section of Kirby's Digest quoted from (6974) indicates what the Legislature meant by the phrase, "at its true market value in money," when it provided that the price which property might bring at auction or at a forced sale should not be considered as the true value for purposes of taxation.

(3) In the case of *Little Rock Junction Railway* v. *Woodruff*, 49 Ark. 381, 390, the term "market value" was defined by this court in the following language:

"The word market conveys the idea of selling and the market value, it would seem to follow, is the selling value. It is the price which an article will bring when offered for sale in the market. It is the highest price which those having the ability and the occasion to buy are willing to pay." *Laser* v. *Jones*, 116 Ark. 206, 172 S. W. 1024.

(4-5-6) In the determination of the market value of a given piece of property, necessarily a great many things are to be taken into account, and much of the voluminous evidence in this record is competent as bearing upon that question, although much of it tends only in a remote de-

gree to the elucidation of that question. It is proper always in determining that question to take into account the character of the land; the uses to which it may be put; the character of the soil; the timber growing on the surface of the land as well as the ores hidden beneath; the accessibility of the land; its development; its proximity to other lands which have been so developed as to add to its own value; and the quantity of other lands of a similar character adjacent to it which would be calculated to make it more attractive to prospective purchasers, together with any other fact or circumstance which affects the property's value. But all of these questions are to be considered for the purpose at last of ascertaining the market value of the tract in question, and that is the value which must be adopted for the purposes of assessment when it has been ascertained. In determining the market value of ordinary non-mineral land, for instance, it would not be improper to consider the depth of the soil, the crops which could be profitably grown, and the relative prices of these crops. A prudent investor would consider the accessibility of any tract of land and its convenience to market, and he would also take into account the facilities for marketing his produce. So, also, with mineral lands, it would be proper to take into account the quantity of the ore, the facilities for, and cost of mining it; as well as any other fact or circumstance which would likely make such lands a more attractive proposition to a prospective buyer. But all these things are to be considered for the purpose only of ascertaining the market value of the land. The income-producing quality of the land enters into the consideration of the question of market value, but the income is not the thing assessed. Property is assessed in this State whether it produces income or not, and property is not taxed according to its income, and, indeed, the question of income is of importance only as it relates to and affects the "market value."

(7) Mr. Gibbons stated that he has listed the appellant company's lands, and had assessed them at 50 per cent of their actual market value, and there is no denial of

the truth of any statement made by him, and such being the case that valuation must be accepted as the proper one for purposes of taxation, as we can not take into account the uses made of this ore after it is shipped out of this State for any purpose other than to determine the value of the land from which it is extracted. After property is taken out of this State, it ceases to be subject to taxation within this State, and no attempt is made by the Constitution or laws of this State to impose upon such property any of the burdens of taxation.

Appellees have much to say about what they call the unit of value, or the aggregate of value, and attempt to apply to the assessment of appellant's ore the rule applied in the assessment of railroad, telegraph, telephone and express companies, where, from the very nature of the property, the value of any particular part can be determined only by a consideration of the whole. But no such rule can be applied here. For the purposes of this litigation it is immaterial what becomes of the ore after it is shipped out of this State, except as the question of its value and uses may affect the value of land from which such ore can be mined. We have the right to assess here for purposes of taxation all property of every kind lying within this State. But in the exercise of this right, we are limited by the market value of the property in this State. *Union Refrigerator Transit Co.* v. *Kentucky,* 199 U. S. 194.

(8)    It follows, therefore, that the court should have made the declaration numbered "A," requested by appellant, and should have assessed the lands at the values given by Mr. Gibbons, and for the error of the court in refusing thus to declare the law and to so assess appellant's lands, the judgment will be reversed and the cause will be remanded with directions to the court below to assess appellant's lands for the purposes of taxation for the year 1913 at the valuations returned by appellant.

We make this finding notwithstanding it is now urged that Colonel Gibbons fixed his valuation upon the basis of 50 per cent of the actual market value, whereas there is evidence to the effect that no property was assessed at a

higher valuation and considerable property was assessed at a smaller per cent of its market value. But the proof shows that the accepted basis for the assessment was 50 per cent of the market value, adopted alike by the assessor, the equalization board and the county court, and was the basis which the court below found had been adopted for the purpose of assessing for taxation property situated in Saline County, and we therefore adopt it, although all property was not assessed at that per cent of its market value.