Larry CRANE, Director, Assessment Coordinator Division and Steve Clark, Attorney General *v.* ARKANSAS ELECTRIC COOPERATIVE CORPORATION

90-177                                          802 S.W.2d 141

Supreme Court of Arkansas
Opinion delivered January 22, 1991

*Steve Clark*, Att'y Gen., by: *Clint Miller*, Asst. Att'y Gen., for appellant.

*Wright, Lindsey & Jennings*, and *Robert M. Lyford*, Vice President and General Counsel of Arkansas Electric Cooperative Corp., for appellee.

ROBERT H. DUDLEY, Justice. This is another in the series of cases involving the extremely complex Amendment 59 to the Constitution of Arkansas. This particular case requires us to decide which provision of the Amendment governs the computation of property taxes on public utilities.

Arkansas Electric Cooperative Corporation, the taxpayer, is an electric cooperative which owns real and personal property in Benton and Jefferson Counties. In 1985, both Jefferson and Benton Counties completed the reassessment and equalization of taxable real and personal property in accordance with our opinion in *Arkansas Pub. Serv. Comm'n* v. *Pulaski County Bd. of Equalization*, 266 Ark. 64, 582 S.W.2d 942 (1979). The millage rates were rolled back in that "base year" in accordance with Amendment 59.

However, in March 1985, voters in some of the school districts in both counties approved millage increases. Appellant Crane, as Director of the Assessment Coordinator Division of the Public Service Commission, and the county tax collector of the two counties, sought to include the increases in the school district millage in the taxpayers' 1985 tax liability. Such an action would have the effect of increasing the taxpayers' property taxes for the two subsequent years also involved in this case.

Appellant Crane and the collectors argued below, and Crane argues on appeal, that a part of Amendment 59, article 16, section 14(a), expressly authorized the collectors to compute the taxpayers' 1985 property taxes by adding in the school district's millage increases. The basis of their argument is one phrase of a sentence in subsection (a) which states that the "base year" shall be "adjusted for any lawful tax or millage rate increase or reduction

imposed in the manner provided by law for the year which the tax adjustment or rollback is to be made, . . . ." The Chancellor correctly held that phrase was not applicable to the taxation of public utilities.

The sentence containing that phrase and the subsection following it provide in full:

> The adjustment or rollback of tax rates or millage for the "base year" as hereinafter defined shall be designed to assure that each taxing unit will receive an amount of tax revenue from each tax source no greater than ten percent (10%) above the revenues received during the previous year from each such tax source, adjusted for any lawful tax or millage rate increase or reduction imposed in the manner provided by law for the year for which the tax adjustment or rollback is to be made, *and after making the following additional adjustments*:

> (i)    *By excluding from such calculation the assessed value of, and taxes derived from*, tangible personal property assessed in the taxing unit, and *all real and tangible personal property of public utilities* and regulated carriers *assessed in the taxing unit*, and . . . .

(Emphasis supplied.)

From the emphasized language and the full text it is apparent that utility property is to be excluded from the general provisions of reassessment and equalization. This provision was written on the premise that utility property was being properly assessed at, or near, its current market value.

Fred Rush, the agency general manager of the Assessment Coordination Division, testified that if Amendment 59 had not included the exception for public utilities and regulated carriers, their property taxes would have dropped because they would have received the benefit of a rollback on millage rates on property which was already substantially assessed at market value. The exception prevented such a reduction of taxes for utilities.

Taxation of utilities is treated separately in subsequent paragraphs of subsection (a) as follows:

> *Provided, however, that the taxes to be paid by public*

*utilities* and regulated carriers in the respective taxing units of the several counties of this State *during the first five (5) calendar years in which taxes are* levied on the taxable real and personal property as *reassessed and equalized* in each of the respective counties as a part of a state-wide reappraisal program, *shall be the greater of the following:*.

(1)   *The amount of taxes paid on property owned by such public utilities* or regulated carriers in or assigned to such taxing unit, less adjustments for properties disposed of or reductions in the assessed valuation of such properties *in the base year* as defined below, *or*

(2)   *The amount of taxes due* on the assessed valuation of taxable *real and tangible personal property belonging to the public utilities* or regulated carriers located in or assigned to the taxing unit in each county *at millage rates levied for the current year.*

As used herein, the term "base year" shall mean the year in which a county completes reassessment and equalization of taxable real personal property as a part of a statewide reappraisal program, and extends the adjusted or rolled back millage rates for the first time, as provided in subsection (a) of this Section, for the respective taxing units in such county for collection in the following year.

(Emphasis supplied.)

Under this separate provision a public utility must pay the greater of (1) the amount *paid* in the *base year* or (2) the amount under the new system. In this case, subsection (1) means that in 1986 the taxpayer was required to pay the same amount paid in 1985, the base year, less adjustments for property disposed of and depreciated. Appellants do not contend that subsection (2) is applicable to the taxpayer in this case. This subsection assures the taxing units that, in the first five years under the new system, they would receive at least as much property tax revenue from public utilities as they had received in the last year of the old system. The only exceptions to this floor were for property which had been disposed of and for normal depreciation.

In summary, the Chancellor correctly interpreted article 16, section 14(a), (1) and (2), to mean that the method for

computing the real and personal property taxes to be paid by a public utility during the first five years under the new system is to compare (1) the amount of taxes paid in the base year, less adjustments for property disposed of and depreciated, with (2) the amount of taxes due on the assessed valuation of property of the utility at millage rates levied for the current year. The public utility will then pay the greater of the two amounts. In this case the greater figure is the amount of taxes paid in the base year.

The decree of the Chancellor is in all things affirmed.

NEWBERN, J., not participating.